Joseph L. ANDERSON, Movant

v.

KENTUCKY BAR ASSOCIATION,
Respondent.

No. 2008–SC–000546–KB.

Supreme Court of Kentucky.

Sept. 18, 2008.

## OPINION AND ORDER

Movant, Joseph L. Anderson, pursuant to SCR 3.480(2), moves this Court to enter an Order resolving the pending disciplinary proceeding against him (KBA File No. 14601) by imposing a Public Reprimand and suspending his license to practice law in the Commonwealth of Kentucky for 30 days, probated upon the condition that Movant issue various apologies, comply with the rules on lawyer advertising, and not receive any further disciplinary charges for one year. The Kentucky Bar Association (KBA) states that it has no objection to the motion.

### I.  Background

Movant was admitted to the practice of law in the Commonwealth of Kentucky on July 16, 2001; his KBA member number is 88810. Movant's bar roster address is 2615 Sparkling Place, Winston–Salem, North Carolina 27103. He has not previously been disciplined in the Commonwealth of Kentucky.

On August 27, 2006, Comair Flight 5191 crashed in Lexington, Kentucky. On August 28, 2006, the Movant, a licensed Kentucky attorney whose office is in North Carolina, where he is also licensed to practice law, contacted Lynne Koenigsknecht, owner of Radiant Designs, a website design company. The Movant personally instructed her to design and publish a website: www.comair5191families.com ("Comair website").

On August 30, 2006, the Comair website was published online, making it available to the general public. The website stated that it offered counseling services to friends and family members of the crash victims. In fact, while it did offer counseling services, the website was also an advertisement for Anderson, Weber & Hen-

ry, P.L.L.C., the Movant's law firm.[1] The website included two references on the left hand side to "Anderson, Weber & Henry PC" (presumably these were links to the firm's website); the statement, "This website donated by Michael J. Pangia and the law offices of Anderson, Weber, and Henry—advocates for victims." at the bottom right of the page; and the text "Legal Advertisement FOR LEGAL ASSISTANCE CALL TOLL–FREE" followed by an 800–number centered at the bottom of the page. The site also included a link labeled "Site Disclaimer," which led to a page with the following text:

> We strive to provide the highest quality legal representation in all cases undertaken by the firm, and our goal is the most complete recovery possible. However, we cannot guarantee results. Anderson Weber & Henry, P.C. provides this website for general informational purposes only, and these materials are not intended to constitute and cannot constitute legal advice or promises of results in a particular case. Persons wishing to take legal action or obtain legal advice should seek legal counsel, and should not rely on any inferences drawn from this site. The materials may be considered advertising in your state, but are intended as informational.

The text was followed by the name of Movant's firm and the firm's physical address, telephone and facsimile numbers and website address. On September 1, 2006, the Movant's firm began advertising the website through Google.com.

On August 31, 2006, Courtney Southern, a paralegal employed by Anderson, Weber & Henry, P.L.L.C., sent an email to an employee of Galls, Inc., directing the employee to the Comair website. Three employees of Galls, Inc., a company based in Lexington, Kentucky, died in the crash of Flight 5191. The employee who was contacted by Ms. Southern forwarded the email to other Galls, Inc. employees. One employee accessed the Comair website and discovered that by clicking on the text "legal assistance," the site immediately changed to the firm website of Anderson, Weber & Henry, P.L.L.C. On September 5, 2006, the website was removed from public access.

On September 6, 2006, the Attorney's Advertising Commission (AAC) sent a letter to the Movant's firm notifying it that both the Comair website and the firm's website had not been submitted for review as advertisements. The submission of the advertisement, pursuant to SCR 3.130–7.02, should have occurred either before publication or simultaneous to the publication.

Before receiving the letter from the AAC, but after being contacted by a reporter regarding the angry reaction to the advertisement in Lexington, Kentucky, the Movant called the AAC to discuss the advertisement. On September 25, 2006, the Movant submitted both of the websites to the AAC for review.

The AAC forwarded the advertisements to the Mass Disaster Task Force, which had been formed pursuant to SCR 3.130–7.60 following the Comair crash. The Task Force reviewed the advertisements and found them to be non-compliant. The Task Force further found that the websites were misleading and, when coupled with the actions of the Movant's paralegal, were in violation of the rules prohibiting solicitation in the immediate aftermath of a mass disaster. The Task Force then referred the Movant to the Inquiry Commis-

1. Anderson, Weber & Henry, P.L.L.C. is no longer in existence. The Movant formed a new firm, Anderson Pangia & Associates, P.L.L.C., in mid–2007.

sion for a determination of what, if any, further action was appropriate.

The Inquiry Commission issued a four-count Charge against the Respondent on April 17, 2008. Count I of the Charge alleges that the Movant's conduct, as described above, violated SCR 3.130–5.3 when he failed to properly supervise his paralegal, Courtney Southern, leading to her attempt to solicit clients in a way that did not comply with the Movant's professional obligations. Count II of the Charge alleges that the Movant violated SCR 3.130–7.09(3) when his paralegal contacted an employee of Galls, Inc. via email and directed the employee to the Comair website, and the email to the Galls, Inc. employee did not contain the words "THIS IS AN ADVERTISEMENT" as expressly required. Count III of the Charge alleges that the Movant violated SCR 3.130–7.09(4), which sets a thirty day no contact period following a mass disaster such as an airplane crash, when his paralegal initiated direct communication with an employee of Galls, Inc., via email. Count IV of the Charge alleges that the Movant violated SCR 3.130–7.15 when he directed the creation of the Comair website, which was false, deceptive, and misleading as it appeared to be a grief counseling website established to aid and support friends and families of those who died in the disaster, but was in fact an advertisement for his firm.

In his answer to the Charge, Movant admitted that his conduct violated the ethical rules, that he was responsible for the acts of his employees and associates, and demonstrated remorse.

## II. Analysis

In his current motion, Movant admits that his conduct as described in the Charge and as recounted above violated the requirements of SCR 3.130–5.3, SCR 3.130–7.09(3), SCR 3.130–7.09(4), and SCR 3.130–7.15. He also agrees to the imposition of discipline and requests a public reprimand with certain conditions and a probated 30–day suspension. The negotiated sanction rule provides that the KBA may "object[ ] to the terms proposed . . . ." SCR 3.480(2). Upon receiving such objection, "if the Court determines good cause exists, [it] shall remand the case for hearing or other proceedings specified in the order of remand." *Id.* However, the KBA has stated that it has no objection to the sanction proposed by Movant. Nevertheless, acceptance of the proposed negotiated sanction still falls within the discretion of the Court: "The Court may approve the sanction agreed to by the parties, or may remand the case for hearing or other proceedings specified in the order of remand." *Id.*

In support of the negotiated sanction, the KBA cites two cases where the misconduct was followed by a public reprimand. *See Howes v. Kentucky Bar Association*, 214 S.W.3d 319 (Ky.2007) (imposing a public reprimand for sending letters to the treating physicians of the attorney's clients that stated that he somehow represented them in the recovery of their fee and they could either pay him 25% or agree that he represent them to recover the fee when the physicians were not his clients nor had they sought his advice or assistance); *Croley v. Kentucky Bar Association*, 176 S.W.3d 136 (Ky.2005) (imposing public reprimand for failure to timely file a lawsuit followed by offer to settle the professional negligence suit filed by his former clients, knowing they were not represented). The KBA also cites two cases where the misconduct led to a suspension. *See Martin v. Kentucky Bar Association*, 214 S.W.3d 322 (Ky.2007) (imposing 30 day suspension when attorney went to two hospitals following car accidents and solicited the vic-

tims); *Gregory v. Kentucky Bar Association,* 151 S.W.3d 31 (Ky.2004) (imposing 30 day suspension for failing to ensure legal assistant/secretary's conduct was consistent with attorney's professional obligations as a lawyer, which resulted in the commingling of client funds with those of attorney).

In support of its argument that a reprimand is the appropriate sanction, the KBA notes that the American Bar Association has stated, with regard to improper solicitation of clients, "Suspension is generally appropriate when a lawyer knowingly engaged in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system." American Bar Association, *Standards for Imposing Lawyer Sanctions* § 7.2 (1992). The Commentary to this section of the ABA's *Standards* indicates that suspension could be an appropriate sanction in this case: "A suspension is also appropriate when a lawyer solicits employment knowing that the individual is in a vulnerable state." *Id.* § 7.2 cmt. The KBA notes, however, that the ABA's *Standards* calls for certain factors to be considered in mitigation, which the KBA argues indicates that a reprimand is the most appropriate sanction for Movant. Specifically, the KBA cites the following mitigating factors: "(a) absence of a prior disciplinary record; . . . (e) full and free disclosure to the disciplinary board or cooperative attitude toward proceedings; . . . (*l*) remorse. . . ." *Id.* § 9.32.

The KBA notes in its Response, "As [Movan]t's Answer to the Charge indicates, he takes full responsibility for his actions and regrets what occurred." The KBA further cites a portion of the ABA's *Standards* that it argues explains the purpose of a reprimand and further indicates that it is the most appropriate sanction in this case: "Reprimand is generally appro-priate when a lawyer negligently engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system." *Id.* § 7.3; *see also id.* § 7.3 cmt. ("Reprimand is the most appropriate sanction in most cases of a violation of a duty owed to the profession. Usually there is little or no injury to a client, the public, or the legal system, and the purposes of lawyer discipline will be best served by imposing a public sanction that helps educate the respondent lawyer and deter future violations. A public sanction also informs both the public and other members of the profession that this behavior is improper.").

While the ABA's *Standards* are not binding authority on this Court by any means, they can at times serve as persuasive authority. After reviewing the standards and the other authorities cited by the KBA, this Court concludes that the discipline proposed by Movant is largely adequate.

In one respect, however, the Court finds that good cause exists to depart from the agreement. Specifically, the Court finds that the agreed upon size of the apology letter to be published in the newspaper is inadequate. Therefore, the Court does not accept the agreed-upon discipline in its entirety.

### Order

ACCORDINGLY, IT IS ORDERED THAT:

1. Movant, Joseph L. Anderson, is publicly reprimanded for the above-described and admitted violations of the Rules of Professional Conduct and is further suspended from the practice of law in the Commonwealth of Kentucky for 30 days, with said suspension probated on the following conditions:

a. Movant will publish in the Lexington Herald–Leader a letter of apology in substantially the same form as the sample language included as an exhibit to the KBA's response to his motion, with any corrections needed to reflect the facts (including the name of the website in question). The letter as published in the Lexington Herald–Leader must be at least one-eighth of a page in size, and must be published within 30 days of the entry of this Order.

b. Movant will send a letter of apology, also in substantially the same form as the sample language included as an exhibit to the KBA's response to his motion, to Galls, Inc. within 30 days of entry of this Order.

c. Movant will submit all advertisements targeted at Kentucky residents, including his firm's website, to the Attorneys' Advertising Commission at least 30 days prior to the publication of the advertisements for a period of one year from the date of entry of this Order.

d. Movant will not receive any further Charges for a period of one year from the date of entry of this Order.

2. In the event that the Movant fails to comply with any of the terms of discipline set forth herein, upon motion by the KBA Office of Bar Counsel, the Court may revoke the probation and impose the 30–day suspension from the practice of law.

3. In accordance with SCR 3.450, Movant is directed to pay all costs associated with these disciplinary proceedings against him, said sum being $95.21, for which execution may issue from this Court upon finality of this Opinion and Order.

4. If Movant is not willing to accept the sanction imposed by this Order, insofar as it differs from that requested by Movant, he may object to it. If Movant so objects, this matter shall be remanded for further disciplinary proceedings pursuant to SCR 3.480(2).

All sitting. All concur.

ENTERED: September 18, 2008.

/s/ John D. Minton, Jr.
Chief Justice