**KENTUCKY BAR ASSOCIATION,**
Movant,

v.

**Zack N. WOMACK, Respondent.**

**No. 2008–SC–000456–KB.**

Supreme Court of Kentucky.

Nov. 26, 2008.

As Modified Dec. 2, 2008.

**410**

## OPINION AND ORDER

The Board of Governors of the Kentucky Bar Association has recommended that Respondent, Zack N. Womack, who was admitted to practice law in Kentucky on October 22, 1985, whose Bar Roster Address is P.O. Box 637, 304 1st Street, Henderson, Kentucky 42419, and whose KBA Member Number is 81220, be suspended from the practice of law for thirty days, and be required to undergo remedial legal education and to make restitution to his clients. The Board was unable to reach a decision as to one of the charges, which the Court shall address below.

Respondent had known Bill Parks for several years, and had represented him in several miscellaneous business matters. On December 6, 2001, Mr. Parks met with Respondent to discuss Respondent's representation of Mr. Parks and his wife Brenda Parks in a foreclosure action on the Parkses's residence. Because of the amount owing the bank, other liens on the property, and Mr. Parks having a very substantial IRS tax lien, it was anticipated that Mr. Parks would not receive any money even if the property brought more than the mortgage. However, because there was not a tax lien against Mrs. Parks, Respondent was to protect her share of any funds due in the event the property brought more than the mortgage. Mrs. Parks did not attend the December 6, 2001 meeting between her husband and Respondent, and in fact, had never met Respondent until the hearing of this ethical matter.

Mr. Parks testified before the Trial Commissioner in this case that he assumed Respondent would charge an hourly fee of $100.00, as Respondent had charged him in other past and pending legal matters. Mr. Parks paid $300.00 on the date the Respondent agreed to represent Mr. and Mrs. Parks on the foreclosure case, which was placed in Respondent's Escrow Account until May 2002, when Respondent paid himself a fee of $294.22, and expenses of $5.78, thus exhausting the $300.00 paid.

Respondent claims that Mr. Parks asked him to take the matter on a contingency fee basis, which he agreed to do. However, Respondent admits there was no written fee agreement.

Respondent filed an Answer to the foreclosure action on behalf of the Parkses. The foreclosure action eventually resulted in a Master Commissioner's sale. After payment of the mortgage and expenses, a surplus of $67,893.54 remained from the sale. As the property was owned by Mr. and Mrs. Parks jointly, each was entitled to $33,946.77 of the excess funds. However, because the IRS had a tax lien against Mr. Parks for an amount substantially in excess of the amount due him, his portion went to the IRS.

The Master Commissioner issued a check payable to Mrs. Parks for $33,946.77. The check was mailed to Respondent as counsel for Mrs. Parks. Respondent was not named as a payee on the check.

Respondent endorsed the check by writing: "Barbara Parks by her attorney Zack Womack." Respondent deposited the check in his Client Escrow Account. According to Respondent, he had been requested by the Parkses to expedite the settlement funds, and had authority to endorse and deposit the check.

On March 17, 2003, Respondent sent a letter to Brenda Parks stating:

Please find enclosed settlement check in the amount of $27,157.42. Ordinarily these matters are handled on a contingent fee, the customary rate of which is 1/3—one third. I have chosen to reduce this amount to 20%, which should leave you substantially more. If you do not agree, please contact me in this regards.

Accompanying this letter was a statement of account, which stated:

### Statement of Account

| | |
|---|---|
| Settlement Amount | $33,946.77 |
| Less 20% Attorney Fees | - 6,789.35 |
| | |
| Total to Brenda Parks | $27,157.42 |
| Total to Womack Law Offices | $ 6,789.35 |
| | $33,946.77 |

Mrs. Parks received Respondent's escrow check for $27,157.42. However, the Parkses claim they did not agree to a contingency fee, and that they requested Respondent to account for his time, charge for his reasonable time at the rate of $100.00 per hour, and refund the difference. Respondent refused these requests.

The Parkses filed a bar complaint against Respondent on July 19, 2004, regarding his representation in a foreclosure case. The Parkses alleged that Respondent charged the contingency fee without a written contract to do so and that they had believed an hourly rate would be charged.

On September 30, 2004, Deputy Bar Counsel sent Respondent a letter requesting information about the work done on the Parkses' foreclosure case. An initial response was filed to the bar complaint on Respondent's behalf on August 11, 2004, in which his attorney claimed that the matter had been handled on a contingency basis and that hourly billing records were not kept on such cases. On August 23, 2004, Respondent executed an affidavit stating that he had reviewed the original response to the bar complaint filed on his behalf, and that the statements contained in the response were true and correct to the best of his knowledge. Several other letters from the Office of Bar Counsel to the Respondent, primarily seeking additional information, and respondent's written responses to these letters followed. In one letter, Respondent claimed that he had performed between 40 and 50 hours of work on the matter. However, billing records disclosed at a later date showed only approximately 27 hours of work done on behalf of the Parkses after exhaustion of the $300.00 retainer paid in December 2001.

The matter was referred to the Inquiry Commission, which issued a six-count Charge. Count I alleged that the Respondent violated SCR 3.130–1.5(a) by charging his clients $6,789.35 for a minimum amount of work done in a foreclosure action.[1]

---

1. SCR 1.130–1.5(a) provides:

"A lawyer's fee shall be reasonable. Some factors to be considered in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

Count II alleged that the Respondent violated SCR 3.130–1.5(c) by charging his clients a contingency fee without prior, written agreement.[2] Count III alleged that the Respondent violated SCR 3.130–1.16(d) by failing to refund an unearned portion of fees to his clients, notwithstanding their demand.[3] Count IV alleged that the Respondent violated SCR 3.130–8.3(b) by endorsing and depositing a check payable to his client into his own escrow account without permission from his client to do so.[4] Count V alleged that the Respondent violated SCR 3.130–8.3(c) when, instead of forwarding a check that represented proceeds from a foreclosure and properly belonged to his client, he signed the check with his client's name as her attorney and deposited the check into his own account without first requesting or

obtaining permission to do so.[5] Count VI alleged that the Respondent violated SCR 3.130–8.1(a) when he made false statements of fact to the Office of Bar Counsel regarding the amount of work performed by his office in representing his clients.[6]

The Charge was served on May 31, 2005 and the Respondent filed an Answer on June 6, 2005. A trial commissioner, Laura M. Douglas, was appointed by the Court and a hearing was held on August 21, 2007. The trial commissioner found the Respondent guilty of all Counts of the Charge and recommended that he be suspended from the practice of law for a period of 61 days, that he be required to attend the Kentucky Bar Association's Ethics and Professionalism Enhancement Program on April 18, 2008, that he pay restitution to Mrs. Brenda Parks in the amount of $4,089 within

(2) The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) Whether the fee is fixed or contingent."

2. SCR 3.130–1.5(c) provides: "A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. Such a fee must meet the requirements of Rule 1.5(a). A contingent fee agreement shall be in writing and should state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon recovery

of any amount in a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and showing the remittance to the client and the method of its determination."

3. SCR 3.130–1.16(d) provides: "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned."

4. SCR 3.130–8.3(b) provides: "It is professional misconduct for a lawyer to ... [c]ommit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects...."

5. SCR 3.130–8.3(c) provides: "It is professional misconduct for a lawyer to ... [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation...."

6. SCR 3.130–8.1(a) provides: "[A] lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not ... [k]nowingly make a false statement of material fact...."

thirty days,[7] and that he pay all costs of the proceeding. The Respondent filed his notice of appeal on November 30, 2007.

The case then proceeded to the Board of Governors. After discussion and after hearing oral arguments on behalf of the parties, the Board voted. Initially, the Board voted whether to accept the trial commissioner's report. The Board voted 17 to 0 not to accept it, but to consider the matter *de novo*. Then the Board voted on each count as follows:

(1) 10 Board Members voted guilty and 7 Board Members voted not guilty on Count I (SCR 3.130–1.5(a)).

(2) Guilty by a vote of 17 to 0 on Count II (SCR 3.130–1.5(c)).

(3) Guilty by a vote of 11 to 6 on Count III (SCR 3.130–1.16(d)).

(4) Not guilty by a vote of 17 to 0 on Count IV (SCR 3.130–8.3(b)).

(5) Not guilty by a vote of 13 to 4 on Count V; and, (SCR 3.130–8.3(c)).

(6) Guilty by a vote of 12 to 5 on Count VI (SCR 3.130.8.1(a)).

Before determining the appropriate sanction, the Board reviewed the Respondent's prior discipline—which was none. The Board voted 13–4 for a 30–day suspension, with restitution and a requirement that Respondent attend remedial ethics training.

The Board of Governors thus recommended that the Respondent be found guilty of violating Counts II, III and VI; not guilty on Counts IV and V. The Board could not reach the vote required by SCR 3.370(6) on Count I, with 10 members voting guilty and 7 members voting not guilty, and thus made no recommendation as to Count I.[8]

The Board of Governors further recommended that the Respondent be suspended for 30 days and be required to pay restitution in the sum of $4,089.00 to the appropriate entity (evidence at the hearing revealed that Mrs. Parks had filed for bankruptcy, thus any refund may be due to the Bankruptcy Trustee); attend KBA Ethics and Professional Enhancement Program (7 hours of remedial ethics) without receiving CLE credit for attendance.

Because the Board was unable to reach the required vote to take action on Count I, Bar Counsel has filed a notice of review under SCR 3.370(8). The notice of review addresses only Count I of the Charge. Because the Board's findings and conclusions as to the other charges are supported by the record and the law, and because the sanction recommended by the Board is appropriate in light of Respondent's lack of prior discipline, this Court elects not to review the remainder of the recommendation of the Board as allowed under to SCR 3.370(9). The remainder of the decision of the Board is therefore adopted pursuant to SCR 3.370(10).

As to Count I, this Court finds Respondent not guilty. The claim that he charged an unreasonable contingency fee assumes that he was entitled to charge *some* contingency fee. However, because he did not have a *written agreement* with the Parkses, as alleged in Count II, he was *not* entitled to charge a contingency fee and could charge only according to his hourly rate. In fact, any ethical failure on

---

**7.** The restitution amount reflects the difference between the amount Respondent withheld from the Master Commissioner's payment and the amount earned by the 27 hours of work (at $100 per hour) shown by the billing records.

**8.** SCR 3.370(6) requires that in a *de novo* review of a disciplinary action, "the findings and any disciplinary action must be agreed upon by eleven (11) or three-fourths (3/4) of the members of the Board present and voting on the proceedings, whichever is less."

Respondent's part regarding his fee was improperly charging a contingency and refusing to return any excess over his hourly rate—both of which are covered by Counts II and III. A finding of guilt under Count I would essentially be a finding that he was guilty of an ethical violation on a non-existing contingency fee, the propriety of which has already been judged elsewhere in this Opinion.

### Order

ACCORDINGLY, IT IS ORDERED THAT:

1. Respondent, Zack N. Womack, is found guilty of Counts II, III and VI and not guilty on Counts I, IV and V. For these violations, Respondent is suspended from the practice of law in the Commonwealth of Kentucky for 30 days from the date of the entry of this order.

2. Respondent must pay restitution of $4,089.00 to the appropriate entity (either the Bankruptcy Trustee, if Brenda Parks has successfully filed for bankruptcy, or Mrs. Parks directly, if she has not filed for bankruptcy).

3. Respondent must attend the Ethics and Professional Enhancement Program to be offered by the Office of Bar Counsel in April 2009. Respondent will not apply for CLE credit of any kind for his attendance at the Ethics and Professional Enhancement Program, and is required to furnish a release and waiver to the Office of Bar Counsel to review his records in the CLE department that might otherwise be confidential, with such release to continue in effect for one year after completion of the remedial education, in order to allow the Office of Bar Counsel to verify that Respondent has not reported any hours to the CLE Commission that are taken as remedial education.

4. In accordance with SCR 3.450, Respondent is directed to pay all costs associated with these disciplinary proceedings against him, said sum being $3,927.30, for which execution may issue from this Court upon finality of this Opinion and Order.

All sitting. All concur.

ENTERED: November 26, 2008.

/s/ John D. Minton, Jr.
Chief Justice