KENTUCKY BAR ASSOCIATION, Movant,

v.

Eric DETERS, Respondent.

No. 2011–SC–000641–KB.

Supreme Court of Kentucky.

Feb. 23, 2012.

## OPINION AND ORDER

Pursuant to SCR 3.370,[1] Eric C. Deters, KBA Member No. 81812, seeks review of the Findings of Fact, Conclusions of Law, and Recommendations of the Board of Governors of the Kentucky Bar Association entered October 21, 2011. Deters was admitted to the practice of law in Kentucky on October 10, 1986 and his bar roster address is 5247 Madison Pike, Independence, Kentucky 40151.

The Board found that Deters violated SCR 3.130–8.2(a), SCR 3.130–3.3(a), SCR 3.130–7.09(2), and SCR 3.130–1.16(d), and recommended he be suspended from the practice of law for sixty-one days and attend remedial ethics training. After reviewing the record, we agree with the Board's findings, adopt their recommendation, and reject Deters' miscellaneous arguments.

## I. BACKGROUND

The Inquiry Commission charged Deters with nineteen counts of misconduct based upon six KBA files and then issued an order consolidating the files on March 20, 2009. On August 19, the Chief Justice appointed Frank Doheny as the trial commissioner, who later rejected Deters' motion seeking his recusal.[2]

---

1. SCR 3.370(8) states that "the Respondent may file with the Court a notice for the Court to review the Board's decision within thirty (30) days after the Board's decision is filed with the Disciplinary Clerk, stating reasons for review, accompanied by a brief supporting his/her position on the merits of the case."

2. In the middle of evidentiary hearings conducted in late June of 2010, it was discovered that, unbeknownst to the trial commissioner, the Radakovics (Deters' former clients) had hired his law firm following Deters' withdrawal from their case. Although the commissioner raised the issue following Mrs. Radakovic's testimony, Deters did not request

Following an evidentiary hearing, the trial commissioner issued a report finding Deters guilty of sixteen of the nineteen counts and recommending that he be suspended from the practice of law for one hundred eighty-one days. Pursuant to SCR 3.370(6),[3] the Board of Governors rejected the commissioner's report and reviewed the files de novo.[4] The Board now recommends that this Court find Deters guilty of four of the nineteen counts and suspend him for sixty-one days. However, because the Board rejected the commissioner's report and considered the case de novo, it made no ruling on the recusal issue.

We pause now to review each relevant file.[5]

## A. KBA File 16024

On January 15, 2008, Deters represented the plaintiff in a matter in which Grant County Circuit Court Judge Stephen Bates entered summary judgment in favor of the defendants. After the defendants subsequently sought sanctions pursuant to CR 11, Deters moved to recuse Judge Bates and filed a supporting affidavit containing multiple allegations of bias. Specifically, Deters alleged that he had never won a contested motion of importance before Judge Bates, that the judge knew Deters had contributed money to his oppo-

nent in a previous election and therefore ruled against him, and that the judge never looked him in eye. Deters further claimed that "the obvious retention of Ruth Baxter as counsel for Defendants is to have the 'insider' with Judge Bates" and that he "believes counsel sought ex parte knowledge of the Summary Judgment to file their Motion prior to a Notice of Appeal."

In addition to the affidavit, Deters made statements on air during a broadcast of Cincinnati radio station WLW 700AM on January 24 and January 25. In so doing, he again asserted that his opposing counsel, Ruth Baxter, was aware that Judge Bates was going to enter summary judgment three months before the order was filed.

On January 25, Judge Bates recused himself from the case. Nonetheless, Deters filed a second affidavit containing additional allegations three days later. The second affidavit specifically addressed the judge's daughter-in-law's domestic case, even though neither his daughter-in-law nor her ex-husband had anything to do with the case in which Deters sought recusal.

The Inquiry Commission thereafter charged Deters with violating SCR 3.130–

---

the commissioner's recusal at the hearing and repeatedly waived any objection on the record. However, on November 12, Deters moved to recuse the commissioner. On December 3, the commissioner rejected Deters' motion.

3. SCR 3.370(6) reads, in pertinent part:

The Board shall decide, by a roll call vote, whether the decision of the Trial Commissioner as to the finding of a violation and degree of discipline imposed is supported by substantial evidence or is clearly erroneous as a matter of law. The Board, in its discretion, may conduct a review de novo of the evidence presented to the Trial Com-

missioner. Both the findings and any disciplinary action must be agreed upon by eleven (11) or three-fourths (3/4) of the members of the Board present and voting on the proceedings, whichever is less.

4. Five members of the board recused and three members were absent, leaving thirteen members to consider the case. By a vote of 12–1, the board rejected the commissioner's report and considered the case de novo.

5. We do not address three files—KBA File 16795, KBA File 15681, and KBA File 15859—because the Board found Deters not guilty as to each count contained within them.

4.4[6] and SCR 3.130–8.2(a).[7] The trial commissioner subsequently found Deters guilty of both charges. On review, the Board of Governors agreed that Deters had violated SCR 3.130–8.2(a) based upon Deters' statements concerning Judge Bates. The Board, though, found him not guilty with respect to SCR 3.130–4.4.

## B. KBA File 15674

On January 17, 2007, the minor son of Richard and Stacey Clise was injured in a bus crash in Grant County. Richard and Stacey had divorced several years earlier, but were still litigating visitation; Stacey was represented at some point in the divorce proceedings by Deters.

Six days after the crash, Deters contacted Richard by telephone as he was standing next to his son's hospital bed. During that call, Deters informed Richard that Stacey had hired him to file suit on behalf of the child and offered to reduce his fee if Richard hired him. Richard responded that he did not want to hire him, and did not want to discuss the matter at that time.

Undaunted, Deters placed six or seven additional calls to Richard, but Richard never returned his calls. Moreover, Deters attempted to send Richard a letter on February 5, 2007, which stated that he would be filing a joint motion requesting that Richard and Stacey be named legal guardians of their son and that Richard should call him for more information.[8] Additionally, the letter repeated Deters' earlier offer to discount his fee.

Richard subsequently hired a lawyer other than Deters to represent him and the child. On February 6, 2007, Deters sent Richard's attorney two forms he had filed on behalf of both Stacey and Richard, requesting that they be appointed co-guardians of Jacob.[9] Richard, though, had never asked Deters to file the petition on his behalf and was "shocked and surprised" to see it. In fact, Richard did not want to be appointed co-guardian with his ex-wife.

On February 20, 2007, Deters filed suit against the lawyers representing Richard in the civil suit, alleging that they had represented Stacey in her divorce from Richard and thus had a conflict of interest if that representation involved a contested guardianship proceeding. Deters then attempted to contact one of Richard's attorneys to discuss the lawsuit. Ruth Baxter, who had been retained by the attorneys to represent them in the suit filed by Deters, returned his call. Deters told her that, if her clients would join him in representing the Clise family in the bus crash case, he would drop the lawsuit he filed against them. Deters also told Baxter that Stacey, his client, had signed a bar complaint against Richard's attorneys, although it would not be filed if they could resolve their differences.

On August 23, 2007, Richard filed a bar complaint against Deters, and the Inquiry Commission thereafter charged him with violating SCR 3.130–3.3(a),[10] SCR 3.130–

---

6. SCR 3.130–4.4 states that, "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person...."

7. SCR 3.130–8.2(a) provides that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge...."

8. The letter did not reach Richard because Deters used the wrong address.

9. The two forms were an Application for Appointment as Guardian and Petition for Appointment as Guardian.

10. SCR 3.130–3.3(a) states that "[a] lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal...."

3.4(f),[11] SCR 3.130–4.2,[12] and subsections (1) [13] and (2) [14] of SCR 3.130–7.09. The trial commissioner subsequently found that Deters "at least" violated SCR 3.130–4.2 and subsections (1) and (2) of SCR 3.130–7.09.[15] On review, the Board of Governors found that Deters had violated SCR 3.130–3.3(a) and SCR 3.130–7.09(2). The board, though, found him not guilty with respect to SCR 3.130–3.4(f), SCR 3.130–4.2, and 3.130–7.09(1).

## C. KBA File 15745

On May 10, 2007, Slavko and Slavica Radakovic retained Deters to represent them in a property line dispute and harassment case against their neighbor. The Radakovics paid Deters $1,500 and agreed to assign him the claim to any award from a judgment in their favor. Although there is some confusion as to whether the parties discussed whether the fee was refundable,[16] the record indicates that the fee was to cover the entire case (including trial) and there was no written fee agreement.

Less than two months after he was hired, Deters moved to withdraw from the case due to allegedly irreconcilable differences with his clients. The Radakovics received neither a refund nor an accounting of how the fee was used, although both were requested. The Radakovics then filed a small claims complaint against Deters, which he paid $500 to settle.

On September 24, 2007, the Radakovics filed a bar complaint against Deters and the Inquiry Commission thereafter charged him with violating SCR 3.130–1.5(c),[17] subsections (a),[18] (b),[19] and (c) [20] of

11. SCR 3.130–3.4(f) provides that a lawyer shall not "present, participate in presenting, or threaten to present criminal or disciplinary charges solely to obtain an advantage in any civil or criminal matter. . . ."

12. SCR 3.130–4.2 states that, "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

13. SCR 3.130–7.09(1) reads:
No lawyer shall directly or through another person, by in person, live telephone, or real-time electronic means, initiate contact or solicit professional employment from a potential client unless:
(a) the lawyer has an immediate family relationship with the potential client; or
(b) the lawyer has a current attorney-client relationship with the potential client.
This Rule shall not prohibit response to inquiries initiated by persons who may become potential clients at the time of any other incidental contact not designed or intended by the lawyer to solicit employment.

14. SCR 3.130–7.09(2) reads:

A lawyer shall not solicit professional employment from a potential client even when not otherwise prohibited by paragraph (1) if:
(a) The potential client has made known to the lawyer a desire not to be solicited by the lawyer; or
(b) the solicitation involves coercion, duress or harassment.

15. The commissioner did not specifically find Deters guilty or not guilty of SCR 3.130–3.3(a) and SCR 3.130–3.4(f).

16. In its brief, the Board points to the testimony of Slavko Radakovic, who testified that she did not remember discussing refundable or nonrefundable fees with Deters. However, in its decision the Board noted that "[t]he Radakovics claim that [Deters] agreed to take their case for a non-refundable retainer of $1,500.00 and their agreement to assign to [Deters] any award from a judgment in their favor."

17. SCR 3.130–1.5(c) states that "[a] contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other

SCR 3.130–1.15, and SCR 3.130–1.16(d).[21] The trial commissioner subsequently found that Deters violated SCR 3.130–1.5(c) and subsections (a), (b), and (c) of SCR 3.130–1.15.22.[22] On review, the Board of Governors found that Deters had violated SCR 3.130–1.16(d). The Board, though, found him not guilty with respect to SCR 3.130–1.5(c) and subsections (a), (b), and (c) of SCR 3.130–1.15.

## II. ASSESSMENT OF GUILT

Upon review of the record, we agree with the Board that Deters violated SCR 3.130–8.2(a), SCR 3.130–3.3(a), SCR 3.130–7.09(2), and SCR 3.130–1.16(d).[23]

### A. SCR 3.1308.2(a)

SCR 3.130–8.2(a) states that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge. . . ." The Board found Deters guilty of violating this rule based on his statements concerning Judge Bates as described in KBA File 16024.

Deters argues that he did not make any false statements about Judge Bates. Moreover, he contends that he never called Judge Bates any names and simply asked how his opposing counsel knew to file a Rule 11 motion on the same day the judge entered summary judgment.

■ We believe Deters made multiple statements in violation of SCR 3.130–8.2(a). Specifically, Deters alleged that Judge Bates knew he had contributed money to the judge's opponent in previous election and therefore ruled against him. Moreover, Deters repeatedly asserted (or at least suggested) that Ruth Baxter and Judge Bates had ex parte contact concerning the summary judgment. As such, we agree with the Board's findings with respect to SCR 3.130–8.2(a).

### B. SCR 3.130–3.3(a)

SCR 3.130–3.3(a) states that "[a] lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal. . . ." The Board found Deters guilty of violating

---

expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated."

**18.** SCR 3.130–1.15(a) states that "[a] lawyer shall hold property of clients . . . that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated. . . ."

**19.** SCR 3.130–1.15(b) states that "a lawyer shall promptly deliver to the client . . . any funds . . . that the client . . . is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

**20.** SCR 3.130–1.15(c) states that "[w]hen in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer)

claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute."

**21.** SCR 3.130–1.16(d) states that, "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . refunding any advance payment of fee or expense that has not been earned or incurred."

**22.** The commissioner made no mention of whether he found Deters guilty or not guilty of SCR 3.130–1.16(d).

**23.** As noted, we do not address the other three files because the Board found Deters not guilty as to each count contained within them. *See supra* note 5. We also, then, decline the charges upon which the Board found Deters not guilty in KBA Files 16024, 15674, and 15745.

this rule based on the guardianship pleadings he filed on behalf of both Stacey and Richard as described in KBA File 15674.

Deters argues that the petition form was typed and prepared by his secretary and reviewed by him, but signed only by his client, Stacey. According to Deters, it was a simple, inadvertent mistake that her ex-husband was included in the form.

The Board responds that Deters' assertion of mistake is an entirely new argument. According to the Board, Deters did not make such a claim to either the trial commissioner or the Board, instead claiming that he was simply attempting to indicate to the probate court that his client wanted shared guardianship with her ex-husband.

■ We believe Deters' conduct violated SCR 3.130–3.3(a). Deters filed two forms on behalf of both Stacey and Richard, requesting that they be appointed co-guardians of Jacob, even though Richard had never asked Deters to file the petition for him. In fact, Richard was "shocked and surprised" to see the petition.

Moreover, we reject Deters' attempt to deflect blame for his misconduct. Notwithstanding the Board's assertion that his "mistake" argument contradicts Deters' earlier position, the ultimate responsibility for the content of a pleading falls on an attorney—not his or her clerical staff. Accordingly, we agree with the Board's findings with respect to SCR 3.130–3.3(a).

### C. SCR 3.130–7.09(2)

SCR 3.130–7.09(2) states that "[a] lawyer shall not solicit professional employment from a potential client even when not otherwise prohibited by paragraph (1) if: (a) The potential client has made known to the lawyer a desire not to be solicited by the lawyer; or (b) the solicitation involves coercion, duress or harassment." The Board found Deters guilty of violating this rule because his phone calls, as described in KBA File 15674, constituted coercion and harassment. In addition, the Board felt that Deters should have concluded from Richard's failure to return his calls that he did not want to be solicited by Deters.

Deters argues that he made the phone calls so as to find out who Richard's lawyer was so a unified front in litigation could go forward. He further contends that the calls were an attempt to keep Richard informed of what he and Stacey were doing as a common courtesy.

■ We believe the repeated phone calls, in light of the letter and Richard's unwillingness to respond, violated SCR 3.130–7.09(2). After initially contacting Richard by telephone as he was standing next to his son's hospital bed and offering to discount his fee, Deters placed six or seven additional calls to Richard, even though he never returned any of the calls. Furthermore, Deters attempted to send Richard a letter that repeated his earlier offer to discount his fee. Based on the foregoing, we agree with the Board with respect to SCR 3.130–7.09(2)—that his phone calls constituted coercion and harassment, and that Deters should have concluded that Richard did not want to be solicited by Deters.

### D. SCR 3.130–1.16(d)

SCR 3.130–1.16(d) states that, "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . refunding any advance payment of fee or expense that has not been earned or incurred." The Board found Deters guilty of violating this rule because he failed to refund the unearned portion of the $1,500 fee to the Radakovics as described in KBA File 15745. According to the Board, even if the Radakovics and

Deters had agreed that the fee was non-refundable, the arrangement did not comply with Ethics Opinion E–380 because the agreement was not reduced to writing.[24]

Deters argues that it was a non-refundable fee. Moreover, he contends that he earned the $1,500 fee.

■ We believe Deters failed to refund an unearned fee and thereby violated SCR 3.130–1.16(d). The Radakovics paid Deters $1,500 and agreed to assign him the claim to any award from a judgment in their favor to cover the entire case (including trial). More importantly, even if the Radakovics and Deters agreed that the $1,500 would be non-refundable, they did not reduce this agreement to writing.[25] Deters subsequently moved to withdraw and the Radakovics did not receive a refund. In fact, Deters paid $500 to settle a small claims complaint filed by the Radakovics. As a result, we agree with the Board's findings with respect to SCR 3.130–1.16(d), including its application of Ethics Opinion E–380. *See Kentucky Bar Ass'n v. Adair,* 203 S.W.3d 144, 146 (Ky. 2006) (adopting decision of the Board finding that attorney repeatedly violated SCR 3.130–1.16(d), even though he characterized his fee as non-refundable, because there was no written agreement to that effect between himself and his clients).

In sum, we agree with the Board that Deters violated SCR 3.130–8.2(a) based upon KBA File 16024, that he violated SCR 3.130–3.3(a) and SCR 3.130–7.09(2) based upon KBA File 15674, and that he violated SCR 3.130–1.16(d) based upon KBA File 15745.

## III. PUNISHMENT

Upon review of the record, as well as the American Bar Association's (ABA) *Standards for Imposing Lawyer Sanctions* and Kentucky law, we also adopt the Board's recommendation that Deters be suspended from the practice of law for sixty-one days and attend remedial ethics training.

### A. ABA *Standards*

■ In *Anderson v. Kentucky Bar Ass'n,* 262 S.W.3d 636, 638–639 (Ky.2008), we favorably cited the ABA's *Standards* in assessing discipline for an attorney who violated four ethical rules. ("While the ABA's *Standards* are not binding authority on this Court by any means, they can at times serve as persuasive authority."). According to the ABA, "[s]uspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding." American Bar Association, *Standards for Imposing Lawyer Sanctions* § 6.12 (1992). Moreover, suspension is also appropriate "when a lawyer knowingly engaged in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a

---

**24.** Ethics Opinion E–380 reads, in pertinent part:

[I]n order for a non-refundable fee retainer to be valid the arrangement must meet the following criteria:

1. The arrangement must be fully explained to the client, orally, *and in a written fee agreement* that is signed by the client;

2. The arrangement must specify the dollar amount of the retainer, and its application of the scope of the representation, and/or the time frame in which the agreement will exist; and

3. The total fee to be charged must be "reasonable."

**25.** *See supra* note 16.

client, the public, or the legal system." *Id.* § 7.2.

Here, Deters filed pleadings on behalf of Richard without his consent and repeatedly solicited his business, thereby violating SCR 3.130–3.3(a) (false statement to a tribunal) and SCR 3.130–7.09(2) (improper client solicitation). As such, some sort of suspension is warranted. However, we also note that the ABA's *Standards* calls for certain factors to be considered in aggravation. *Id.* § 9.1 ("After misconduct has been established, aggravating . . . circumstances may be considered in deciding what sanction to impose.").

According to the ABA, aggravating factors include prior disciplinary offenses, presence of multiple offenses, refusal to acknowledge the wrongful nature of his or her conduct, vulnerability of the victim, and substantial experience in the practice of law. *Id.* § 9.2. Here, Deters had received prior discipline and now stands guilty of violating four ethics rules stemming from three KBA files. Furthermore, Deters has maintained his innocence with respect to all charges throughout the underlying proceedings [26] and had repeatedly attempted to contact Richard, who was caring for his injured son. Finally, Deters was admitted to the practice of law in Kentucky on October 10, 1986, and thus had substantial experience in the practice of law. Simply put, we believe five of the enumerated aggravating factors are present in this case.[27]

Having thoroughly considered the ABA *Standards*, we now turn to Kentucky precedent.

## B. Kentucky Law

Kentucky case law also supports the Board's recommended punishment. In *Kentucky Bar Ass'n v. Prewitt*, 4 S.W.3d 142, 143–144 (Ky.1999), this Court suspended an attorney for two years for violating SCR 3.130–8.2(a). In that case, the attorney prepared and disseminated a press release that accused three judges—a circuit judge who earlier ruled against him and two appellate court judges who upheld the ruling—of taking bribes from utility companies. *Id.* at 143.

In *Kentucky Bar Ass'n v. Watts*, 190 S.W.3d 922, 924 (Ky.2006), an attorney admitted that he violated SCR 3.130–3.3(a) by filing a pleading on behalf of a bankruptcy trustee when he had no authority to do so. The attorney, though, had no prior disciplinary history, had been honest about the violations he committed, and the lawsuit settled to the benefit of his former client. *Id.* at 924–925. Based upon his admitted violations [28] versus mitigating cir-

---

**26.** Deters contends that he should not be punished for refusing to admit guilt. Whatever the merits of his contention, we also note that Deters specifically denied making the following statement concerning Judge Bates that appears in the transcript of the January 24, 2008 radio show during oral argument before the Board:

> I've never won a serious contested motion in his courtroom. You know why? I gave a thousand dollars to Markus Carrie [sic] who ran against him. And because Mark Carrie [sic], I know is an intelligent, smart, would have been a good judge. Well, I think that must be why he can't set that aside. I can tell you right now, lots of

> judges set that kind of thing aside. He's not able to.

In short, Deters not only refused to acknowledge the wrongful nature of his conduct, *but also refused to acknowledge that he committed the conduct.*

**27.** Deters contends that four of the mitigating factors enumerated in ABA *Standards* Section 9.3 are present in this case. However, rather than offer an explanation, Deters baldly asserts that "[a]ll of these mitigating factors were documented in the record and ignored by the Board by their own admission."

**28.** The attorney also admitted that he had violated SCR 3.1308.3(a) and (c), although the

cumstances, this Court adopted the KBA's disciplinary recommendations and thus publicly reprimanded the attorney. *Id.* at 925.

In *Barber v. Kentucky Bar Ass'n*, 302 S.W.3d 84, 86 (Ky.2010), we publicly reprimanded an attorney and suspended him for thirty days, although the suspension was probated for one year on the condition that he attend the entire Ethics and Professional Enhancement Program and receive no new disciplinary charges for one year. This sanction derived from his admitted misconduct in two separate cases, which included violating SCR 3.130–7.09 by twice attempting to solicit professional employment even though he had no family or direct prior professional relationship with the potential client. *Id.* at 85.[29]

Finally, in *Kentucky Bar Ass'n v. Womack*, 269 S.W.3d 409, 412–413 (Ky.2008), the Board found that, among other things, an attorney violated SCR 3.130–1.16(d) by failing to refund an unearned portion of fees to his clients, notwithstanding their demand.[30] In light of the attorney's lack of prior discipline, we deemed the Board's recommended sanction appropriate and thus-suspended him for thirty days and ordered him to attend remedial ethics training. *Id.* at 413–414.

In sum, we agree with the Board's recommendation that Deters be suspended from the practice of law for sixty-one days and attend remedial ethics training, as this punishment conforms to the ABA *Standards* and our own precedent.[31]

## IV. MISCELLANEOUS ISSUES

Besides contesting the Board's determinations as to his guilt and corresponding punishments, Deters also sets forth several other arguments, which we consider separately.

### A. Deadline

■ Deters asserts that the Board missed the deadline to issue its findings and order. In support, Deters asserts that the Board only had thirty days to file a written decision memorializing their vote. Because the vote took place on September 16, 2011, yet was not entered until October 21, Deters posits that the matter should be dismissed because doing so would be a "short, simple" solution and because there is no relief for an attorney who misses a deadline in the bar discipline process.

At the time of the vote (and when the Board entered its decision), SCR 3.370(7) provided that "[t]he Board shall issue a written decision within thirty (30) days of voting on the cases." [32] In *Kentucky Bar*

---

basis for this admission is unclear from the case. *Watts,* 190 S.W.3d at 924–925.

29. In the other case, the attorney admitted that he violated SGR 3.130–8.1(b) by failing to respond to a bar complaint. *Barber,* 302 S.W.3d at 85.

30. The Board also found that the attorney violated SCR 3.1301.5(c) and SCR 3.1308.1(a) by charging his clients a contingency fee without prior, written agreement and by making false statements of fact to the Office of Bar Counsel regarding the amount of work performed by his office in representing his clients. *Womack,* 269 S.W.3d at 412–413.

31. In assessing punishment, we declined Deters' request that we consider his potential role in several Supreme Court Rule changes, as well as the fact that he has a pending federal lawsuit challenging Bar Counsel's absolute immunity and the recusal process for trial commissioners.

32. SCR 3.370 has since been amended, effective November 15, 2011, and now reads, in pertinent part:

(6) The Board shall issue a written decision within forty five (45) days of voting on the cases.

*Ass'n v. Baker*, 889 S.W.2d 779, 780 (Ky. 1994), the trial commissioner filed his report with the Board three and one-half months after the time required by the relevant rule, and none of the procedures concerning late reports were complied with. *See also* SCR 3.360(2). Although the provisions of the rule were mandatory for the KBA, this Court nonetheless suspended the attorney because he failed to demonstrate prejudice due to the commissioner's violation. *Id.*

We acknowledge that the Board missed the deadline. However, as in *Baker*, Deters has not shown prejudice resulting from the Board's tardiness. In fact, Deters expresses confidence that the delay was inadvertent. As such, we decline his invitation to dismiss.

**B. Recusal**

■ Deters next argues that the Chief Justice should have considered his motion to recuse the trial commissioner. However, because the Board rejected the commissioner's report and considered the case de novo, it made no ruling on the recusal issue. We follow the Board's logic and also decline to address this issue.

**C. Reforms**

■ Deters asserts that he would like his case to be a "platform for reform" and contends that changes need to be made to the discipline process. Whatever the merits of his contention, it has no bearing on the matter before us. As such, we also decline to address this issue.

**D. Constitutionality of SCR 3.130–8.2(a)**

■ Finally, Deters raises the notion of free speech and contends that the constitu-

tionality of SCR 3.130–8.2(a) needs to be addressed "because it concerns one of the most cherished and fundamental rights provided to citizens of this nation." Specifically, he questions the "reckless" component of the rule. *See* SCR 3.130–8.2(a) ("A lawyer shall not make a statement . . . with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge. . . .").

At the outset, we note that Deters failed to actually include this issue in his brief. Instead, Deters refers us to an attached exhibit, which is an inappropriate means to make an argument.

Notwithstanding Deters' approach, the exhibit itself fails to set forth an actual argument. Rather, Deters offers this Court something more akin to a memorandum analyzing federal and Kentucky case law. At no point, though, does Deters assert that SCR 3.130–8.2(a) is invalid either facially or as-applied to him, and we are not in the business of granting advisory opinions.[33] In short, we decline to address this issue.

ACCORDINGLY, IT IS HEREBY ORDERED that:

(1) Respondent, Eric C. Deters, is found guilty of violating SCR 3.130–8.2(a), SCR 3.130–3.3(a), SCR 3.130–7.09(2), and SCR 3.130–1.16(d);

(2) For these violations, Deters is hereby suspended from the practice of law for sixty-one days and required to attend the entire KBA Ethics and Professionalism Enhancement Program (EPEP), which is anticipated to be seven hours, within one year of the date of this Order;

---

33. As Deters himself noted, this Court already addressed the interplay between our rules of professional conduct and freedom of speech in *Kentucky Bar Ass'n v. Heleringer*, 602 S.W.2d 165 (Ky.1980) (*discussing In re Sawyer*, 360 U.S. 622, 79 S.Ct. 1376, 3 L.Ed.2d 1473 (1959)).

(3) Deters will not apply for Continuing Legal Education credit of any kind for his attendance at the EPEP. He will furnish a release and waiver to the Office of Bar Counsel to review his records of the CLE Department that might otherwise be confidential, such release to continue in effect until after he completes his remedial education, in order to allow the Office of Bar Counsel to verify that he has not reported any hours to the CLE Commission that are to be taken as remedial education.

(4) Pursuant to SCR 3.390, Deters shall, within ten days from the entry of this Opinion and Order, notify all clients with Kentucky cases in writing of his inability to represent them, and notify all courts in which he has matters pending of his suspension from the practice of law, and furnish copies of said letters of notice to the Director of the KBA. Furthermore, to the extent possible and necessary, Deters shall immediately cancel and cease any advertising activities in which he is engaged;

(5) In accordance with SCR 3.450, Deters shall pay costs associated with these proceedings in the amount of $1,834.02, for which execution may issue from this Court upon finality of this Order.

All sitting. All concur.

ENTERED: February 23, 2012.

/s/ John D. Minton, Jr.
    Chief Justice