## Lester v. Commonwealth et al.

(Decided June 2, 1933.)

228

J. W. CAMMACK, STEPHENS L. BLAKELY and BLAINE Mc-LAUGHLIN for appellant.

L. J. CRAWFORD, L. J. DISKIN and FRED B. BASSMANN for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

This is a disbarment proceeding. The charges against the appellant are contained in nine specifications. On his trial, he was found not guilty of two of such specifications, but guilty of the other seven. Thereupon a judgment of disbarment was entered. He has appealed.

In view of our conclusions as to the timely motion made by the appellant to require the circuit judge, the Honorable A. M. Caldwell, who presided over his trial to vacate the bench, we will not consider any of the other questions involved on this appeal and concerning them we express no opinion.

The affidavit of appellant filed in support of his motion to require Judge Caldwell to vacate the bench is in substance as follows: After reciting that he was a member of the bar of Campbell county and had been such for about five years preceding the institution of this prosecution, the appellant charged that Judge Caldwell was not and had not been for over two years on friendly terms with him, their relationships being strictly limited to the necessary transaction of such legal business as appellant had with the court; that the feeling which existed between him and the judge was so violent and rancorous as that said judge could not give him a fair and impartial trial. Appellant then stated that the reasons for his statements as to the described feeling between him and the judge were these:

During the summer of 1930, appellant instituted in the Campbell circuit court, over which Judge Caldwell presided, a number of actions in equity pursuant to and by virtue of section 3941m-1 et seq. of the Kentucky Statutes, seeking to abate certain bawdy houses; that in such actions he obtained temporary injunctions which were violated by the owners of said bawdy houses; that these violations occurred during the summer vacation of the court, because of which the appellant had to appear before Judge Caldwell in chambers in order to obtain the necessary rules and writs to punish such violators of such injunctions; that upon the second occasion when appellant appeared before Judge Caldwell to obtain such rules or writs, Judge Caldwell exclaimed to this affiant: ''Quit bothering me about these damn whore house cases;'' that appellant thereupon replied that he was only trying to do his duty; that he had at all times accorded the court the respect and courtesy due his office and that he intended no disrespect or discourtesy; that he was proceeding only as he had a right to do; and that thereupon Judge Caldwell responded that the appellant had better treat him with the respect and courtesy due his office or appellant would be ''attended to''; that in these actions to abate these bawdy houses and after the temporary injunctions had been obtained, the keepers of the bawdy houses took up with the appellant the matter of settling said cases, including the amount of fee to be paid appellant for bringing and prosecuting the suits as the statute allows; that appellant agreed with the attorneys for these bawdy houses that he would accept as his fee the sum of $250 in each case, which, being paid, the information concerning such agreed settlement was forthwith conveyed to Judge Caldwell who acquiesced in the same, and that thereafter judgments approved by Judge Caldwell were entered in these bawdy house cases adjudging these fees and acknowledging their receipt; that all this had been done in every case involved prior to the convening of the court for its fall term of 1930; that notwithstanding Judge Caldwell's knowledge of these facts as to the fees in these bawdy house cases and his approval thereof, he on impaneling the grand jury of Campbell county in October, 1930, charged that body substantially as follows:

''Since the impaneling of the last grand jury, crime conditions in Newport and other communi-

ties of Campbell county have not materially increased, and it is gratifying to note that the criminal element which infested Newport in the past continues to give the city a wide berth.

"Notwithstanding the adverse publicity of which Newport has been the target, it is a fact and the records will show it, that crime conditions here are so below those in other states, and the good citizens are well aware of these conditions, regardless of so-called camouflage or smoke screens which have been used in an effort to belittle the splendid work of the public officials.

"It is a matter which I desire you to thoroughly investigate pertaining to the circumstances and real motives in the filing of a number of injunction suits in an alleged cleanup drive against women operators of alleged disorderly houses in Newport. * * *

"Rumors are current that graft and protection money have been paid in connection with these injunction suits and the operators of these houses have had money extorted from them. It is also rumored that attorneys have been involved in these graft charges. This is a serious matter and nothing should be left undone in making a thorough probe. If the evidence warrants, indictments should be returned against all concerned in any unlawful practices. * * *

"I wish further to say that it has been rumored that attorneys involved in court litigations have accepted fees in these cases which were outside of the court records. This is purely a violation of the law inasmuch as these cases have not finally been decided and no disposition of them has been made and judgment rendered against these women, no fees can be fixed for these attorneys, and it is improper if not unlawful for them to accept any fees until the amount is fixed by the court."

Appellant then averred that these remarks to the grand jury were aimed at him and were ungrounded because the court well knew at the time he so charged the grand jury all of the facts and circumstances surrounding the compromises made by appellant as to the

fees in these bawdy house cases, and had approved by orders entered in court the fees so agreed upon, and that the judge so charged the grand jury, which returned no indictments, in an effort to humiliate and chagrin the appellant; that when he protested to the judge and inquired of him why he had found it necessary to so embarrass him, the judge responded: "Mind your own business." Appellant next stated that following this charge to the grand jury there appeared in the Kentucky edition of the Cincinnati Post, a scathing editorial criticizing Judge Caldwell very severely for this charge to the grand jury, and pointing out the wide prevalence of gambling and the open condition of bawdy houses in Newport, none of which had been disturbed by any public official until appellant had instituted his injunction suits. Affiant avers that he had nothing to do with the inspiring or the printing of said editorial; that after its appearance, appellant appeared before Judge Caldwell on a legal matter when the latter accused him of inspiring this editorial and stated: "If you and your damn newspaper expect to get anywhere with me by that sort of stuff, you are badly mistaken"; that appellant explained to the judge that he had nothing to do with that editorial. Appellant then alleges that thereafter and on the trial of one Mamie Moler, who was charged with the maintenance of a bawdy house under an indictment found by the grand jury, the commonwealth's attorney, the Honorable L. J. Diskin, in an opening statement to the jury, berated the appellant at great length (the exact language being set out in appellant's affidavit), although the appellant was not involved in that case; Judge Caldwell doing nothing to call the commonwealth's attorney to account for his wholly unauthorized and unwarranted attack on appellant and which was wholly untrue and made solely for the purpose of injuring the appellant; that when later the appellant complained to Judge Caldwell about the matter, the latter responded: "I'll run this court, not you." Appellant in conclusion then charges that thereafter Judge Caldwell was shown by some third party a brief which had been filed in the Court of Appeals in a case which had been appealed from Judge Caldwell's court, which brief had been prepared by the affiant. The judge was asked by this third party what he thought of certain statements made in the brief (such state-

ments not being set out in the affidavit), and Judge Caldwell had in substance replied:

"There is a matter coming up concerning Lester, in which Lester may wish to procure me to vacate the bench, and I am being very careful that Lester gets nothing on me which would justify the filing of an affidavit for my removal, and if Lester does file such an affidavit, I will then be in a position to cause him to be indicted for false swearing."

In determining the sufficiency of the foregoing affidavit to support appellant's motion to require Judge Caldwell to vacate the bench on the trial of this prosecution, it must be remembered that under our practice, the truthfulness of the facts stated cannot be questioned by the judge. Vance v. Field, 89 Ky. 178, 12 S. W. 190, 11 Ky. Law Rep. 388. Hence, as pointed out in Chreste v. Commonwealth, 178 Ky. 311, 198 S. W. 929, and Sparks v. Colson, 109 Ky. 711, 60 S. W. 540, 22 Ky. Law Rep. 1369, it is all the more important that the facts and not the litigant's conclusions or suspicions be set forth to the end that this court may have the opportunity of testing their sufficiency if the trial judge should hold them insufficient. The facts stated must be such that from them it may be readily determined that the judge sought to be removed is so prejudiced against the litigant as to make it reasonably apparent that he cannot with his human nature give the affiant a fair and impartial trial. See Chreste v. Commonwealth, supra, in which the authorities are collected and discussed. Measuring the appellant's affidavit by the yard stick described in the Chreste Case, we are of the opinion that it does state facts, the truthfulness of which Judge Caldwell was not permitted under our practice to deny on the hearing of this motion, which showed such a state of prejudice on Judge Caldwell's part towards the appellant as to require him to vacate the bench on the trial of appellant under this prosecution. Turning our attention to the very heart of the affidavit, we find that appellant avers that Judge Caldwell well knowing that he had approved and ratified the compromise fees appellant had received in the bawdy house cases, and had entered judgments in them to that effect, nevertheless vigorously charged the grand jury to investigate the motives of those instituting these cases, a matter that

was entirely irrelevant as counsel for the commonwealth in this prosecution in effect admitted on the oral argument in this court, and further told the grand jury to look into the matter of fees in these cases being compromised, informing the grand jury that these cases had not yet been finally disposed of, all of which was done with the knowledge that appellant was the person at whom the charge was aimed and with the purpose of embarrassing, humiliating, and harassing him, the purpose and animus of the judge being established and proven by his curt remark to appellant that appellant should mind his own business, made in response to appellant's protest against this charge to the grand jury. In the light of this charge, the judge's petulant remark about the "damn whore house cases," made earlier in the summer, takes on an added importance. Further, the judge would scarcely have been human had he not felt outraged at the editorial which appeared in the Kentucky edition of the Cincinnati Post following this charge to the grand jury. That he thought appellant was instrumental in its publication sufficiently appears as well as his anger at appellant for his supposed participation in its appearance despite appellant's disclaimer of responsibility for it. Although, perhaps, Judge Caldwell was not technically to be blamed for the attack on appellant by the commonwealth's attorney in the Moler Case since appellant took no part in that prosecution and no one connected with it seems to have objected to it, yet, as Judge Caldwell well knew, it was wholly unwarranted and malicious. Instead of expressing any disapproval of it when appellant later complained of it or even resting his noninterference on the technical ground that no one had objected, the judge rather tended to set the seal of his approval upon it by the curt way in which he reproved the appellant for making a most natural objection. It is not the judge's noninterference in the attack of the commonwealth's attorney that marks his prejudice, but his attitude towards the complaint of appellant made thereafter. Although the judge may not have been able to do anything about the complaint, yet the complaint was a natural one and the judge well knowing the absolute impropriety of the conduct of the commonwealth's attorney could not have taken the position he did as to appellant's complaint but for his prejudice towards appellant which his charge to the grand jury disclosed

and his anger at the editorial which appeared in the Cincinnati Post revealed; and all of which was further made manifest by his remark concerning the brief appellant had filed in the Court of Appeals.

True it is that taken separately as counsel for the commonwealth did on the oral argument, each of the facts and circumstances set out in this affidavit may perhaps be explained and argued away as not showing such a bias or prejudice on Judge Caldwell's part as to require him to vacate the bench; but taken as a whole and each fact considered in the light of the facts which had gone before, the picture painted is one of such bias and prejudice as undoubtedly required Judge Caldwell to vacate the bench. Again, in justice to Judge Caldwell, we repeat that under our practice he was not permitted to deny the allegations of this affidavit and our discussion of them is not on the assumption of their absolute verity but only as to their assumed truthfulness for the purpose of testing the sufficiency of this affidavit.

The refusal of Judge Caldwell to vacate the bench when he should have constitutes reversible error. Wathen, Mueller & Co. v. Commonwealth, 133 Ky. 94, 116 S. W. 336, 1176; Massie v. Commonwealth, 93 Ky. 588, 20 S. W. 704, 14 Ky. Law Rep. 564. In the latter case, the refusal of the trial judge to vacate the bench when he should have was held reversible error though no other error was found in the trial of the case. We said:

> "But it is said the record, so far as the judge's rulings are concerned, indicates no hostility or prejudice against the appellant; but that is not the question, for the accused has the right to be tried by a judge that is fair and impartial; and when he has good reason to believe, supported by facts, that he will not afford him such trial, he should not be compelled to take chances of a trial before that judge in order that the truth of the matter may be developed, which may never be developed, because there are many ways that a partial or prejudicial judge may knife a party that he is trying without it appearing from the record, or without his being able to ascertain the act. So, when the fact is made to appear by proper affidavits, the

judge should then vacate, and it is a reversible error if he does not.''

For the reasons hereinbefore set out, the judgment is reversed with instructions to grant the appellant a new trial in conformity with this opinion.