Charles E. LESTER, Jr., Movant,

v.

KENTUCKY BAR ASSOCIATION,
Respondent.

Court of Appeals of Kentucky.

Oct. 17, 1975.
Rehearing Denied March 5, 1976.

James Steven Hogg, Jackson, for movant.

Charles L. Calk, Lexington, Leslie G. Whitmer, Director, Kentucky Bar Association, Frankfort, for respondent.

PER CURIAM.

This is a disciplinary action in which Charles E. Lester, Jr., has applied for reinstatement to practice law in Kentucky. He was disbarred on December 13, 1968, and a rehearing denied on March 31, 1969. Lester's application for reinstatement was filed on January 10, 1974, and was timely heard by the trial committee. The committee, after holding evidentiary hearings, made a report to the Board of Governors in which they recommended that the application be sustained and that the applicant be reinstated to the practice of law. The Board of Governors considered the trial committee's report but was not persuaded thereby. Instead, the Board of Governors recommended to this court that the application be denied.

Lester's disbarment was predicated upon his conviction in the United States District Court for the Eastern District of Kentucky of the offense of conspiring to violate the civil rights of George Ratterman. Cf. *Unit-*

*ed States v. Lester,* 363 F.2d 68 (6th Cir., 1966). In his petition for reinstatement the applicant contends that he has been sufficiently rehabilitated to be readmitted to the practice of law.

On June 11, 1975, the court issued a rule for Lester to show cause why the recommendation of the board should not be followed. Pursuant to RCA 3.430 and 3.520, the applicant filed a timely response.

A person seeking reinstatement has the burden of overcoming a prior adjudication of disqualification. The judgment of disbarment continues to be evidence against the applicant and he may overcome it only by most persuasive proof. *In re Weaks,* Ky., 407 S.W.2d 408. In order to be reinstated, it is important that the applicant's conduct and character since his disbarment have been exemplary; that he be worthy to have public confidence and trust placed in him; and that he has complied fully with the order of disbarment. *In re Nisbet,* Ky., 296 S.W.2d 465. Additional factors which should be considered include the nature of the conduct leading to disbarment, the applicant's recognition of his wrongdoing, and his previous and subsequent conduct in regard to the practice of law. *In re Stump,* 272 Ky. 593, 114 S.W.2d 1094.

As a general proposition, opening the door to re-entrance into the profession is not a matter of grace or pardon for past offenses. *In re Stump,* supra. While sympathetic considerations are factors, the court must be cognizant of the responsible position a lawyer occupies in the community. Reinstatement in a particular case should in no way lower professional standards. It is the court's duty to protect the interests of the public and the profession, as well as those of the applicant. *In re Weaks,* supra.

In the instant case, a very troubling question is whether Lester has fully complied with the order of disbarment. The record indicates several instances where Lester was engaged as a "law clerk" in his former office. His services included doing legal research, preparing memoranda, and giving advice and opinions on legal matters to associates. There is no indication that Lester met with clients.

RCA 3.020 defines the practice of law as follows:

"* * * any service rendered involving legal knowledge or legal advice, whether of representation, counsel or advocacy in or out of court, rendered in respect to the rights, duties, obligations, liabilities, or business relations of one requiring the services. * * * "

In light of this definition, it is difficult to say whether Lester was serving as a "law clerk" for his former firm or practicing law vicariously. Some insight in resolving this question may be found in the compensation received by Lester for his services. The record is replete with testimony of Lester's receiving substantial sums as compensation for his services on several occasions during the period of his disbarment. The payments are more nearly commensurate with those received for legal services than with the token sums generally earned by law clerks. It appears that Lester has violated the spirit if not the letter of the order of disbarment.

A trivial but aggravating point is the fact that the firm of "Lester and Riedinger", of which applicant was the senior partner, continued to use the same name after Lester's disbarment. The only possible legitimate reason for this was that Lester's son did some work with the firm following his father's disbarment; however, this justification is not plausible since the applicant's son was never a partner in the firm. Certainly, retaining the name of a disbarred partner in the firm's title has the appearance of impropriety. There is no indication that the applicant attempted at any time to rectify this matter.

The next obstacle to Lester's reinstatement is found in the answers supplied in the application and in testimony given by

him before the trial committee. With respect to the question in the application of whether the applicant had ever been "Charged with unprofessional or unethical conduct," Lester replied, "See *Lester v. Cmlth, etc.* (1933), 250 Ky. 227, 62 S.W.2d 469; upon re-trial charges dismissed." The record indicates, however, that upon remand a judgment of censure on one count and formal censure on another count was entered. Such a misrepresentation by the applicant cannot be excused. Also, when asked in the application to list "Dates and Places of Employment since * * * Disbarment," Lester answered "None." Applicant admittedly worked as a "law clerk" during this period. Even more troubling is Lester's attempted explanation of income of $1,680 for "clerical work" reported in his 1971 Federal Income Tax Return. At first, Lester contended that the income was from clerical work performed "down at the boat harbor," but after being confronted with ledger entries for the law firm of Lester and Riedinger showing two payments of $840 each (a total of $1,680) to himself, he acknowledged that the $1,680 "could have been" from the law firm.

A final consideration is the fact that most of the affidavits and testimony concerning Lester's reputation and rehabilitation are exceedingly superficial. The record lacks substantial specific testimony which demonstrates that the applicant has rehabilitated himself in the period since his disbarment. In fact, most of the witnesses testifying concerning Lester's rehabilitation and ability have been only in occasional casual contact with the applicant since his disbarment. At any rate, the opinions are the same as the affiants and witnesses would have expressed prior to the disbarment.

The burden is on Lester to establish that he has rehabilitated himself in spite of his past failings, so as to be worthy of trust and confidence and capable of being an asset to the legal profession. This burden is heavy indeed when the former conduct demonstrates a basic lack of professional morality. *In re Applewhite,* Ky., 401

S.W.2d 757. The record falls short of persuading the court that the applicant has, since his disbarment, earned the right to re-enter the legal profession.

The recommendations of the Board of Governors are accepted and the application for reinstatement is denied.

REED, C. J., and STEPHENSON, JONES, PALMORE, CLAYTON and STERNBERG, JJ., sitting.

All concur.