TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0334-KB

ERIC CHARLES DETERS                                          MOVANT


V.                          IN SUPREME COURT


KENTUCKY BAR ASSOCIATION                          RESPONDENT



## OPINION AND ORDER

By rule, an attorney's suspension for 180 days or less in a disciplinary case expires by its own terms unless Bar Counsel files an opposition to termination of suspension. In the event of filed opposition, the applicant bears the burden of proof by clear and convincing evidence that he or she possesses the requisite character, fitness, and moral qualification for readmission. In this instance, the issue we must determine is whether Eric Charles Deters[1] satisfied his burden of proof such that the Kentucky Office of Bar Admissions' Character and Fitness Committee and the Kentucky Bar Association Board of Governors, both by unanimous votes, erred in their determinations to deny

---

[1] Deters' bar roster address is 5247 Madison Pike, Independence, Kentucky 40151. His KBA member number is 81812.

Deters' application for reinstatement.[2] We hold that they did not err, and we therefore likewise deny his application.

## I. Facts and Procedural Background

In 2012, we upheld the Board's recommendation to suspend Deters for 61 days. *Ky. Bar Ass'n v. Deters*, 360 S.W.3d 224, 226 (Ky. 2012).[3] We granted Deters' application for reinstatement notwithstanding Bar Counsel's objection and the Board's recommended disapproval. *Deters v. Ky. Bar Ass'n*, 408 S.W.3d 71, 72 (Ky. 2012).[4] The following year, 2013, we upheld the Board's recommended 60-day suspension of Deters. *Ky. Bar Ass'n v. Deters*, 406 S.W.3d 812, 822 (Ky. 2013).[5] Deters' law license has remained suspended

---

[2] As will be recounted, *infra,* Deters' application was before both entities twice. Each time, the votes to recommend denial were unanimous. At Deters' initial hearing before the Committee, three of five members participated, one recused and one was absent. At his second hearing before the Committee, six of seven members participated with the same member recused. However, due to turnover in the membership, the Committee had four new members. In other words, seven different individuals voted that Deters failed to meet his burden of proof. A similar analysis holds for the Board. Following its first hearing, the vote was 15-0; after the second, 17-0. Due to turnover in membership, twenty-seven individuals heard all or part of the case. All twenty-seven voted that Deters had failed to satisfy his burden of proof.

[3] Discipline was imposed for three separate cases in which Deters was sanctioned for (a) making a statement that he knows to be false or with reckless disregard as to truth or falsity concerning the qualifications or integrity of a judge; (b) making a false statement of law or fact to a tribunal; (c) improperly soliciting professional employment from a potential client; and (d) failing to refund an unearned fee. 360 S.W.3d at 230-32.

[4] The Committee recommended approval of reinstatement with conditions. 408 S.W.3d at 72. The Board, however, recommended disapproval because it found Deters had failed to prove his conduct while suspended "showed him worthy of the trust and confidence of the public or that he appreciated the wrongfulness of his misconduct, was contrite and had rehabilitated himself." *Id.*

[5] Discipline was imposed for two separate cases in which Deters was sanctioned for (a) three counts of dishonesty or making false statements: and (b) one count of a Kentucky Rule of Civil Procedure (CR) 11 violation. 406 S.W.3d at 820-21.

2

since 2013. These violations were not, however, Deters' sole disciplinary actions. We similarly upheld additional 60-day suspensions for violations which occurred prior to 2013. *Deters v. Ky. Bar Ass'n*, 484 S.W.3d 299 (Ky. 2016);[6] *Ky. Bar Ass'n v. Deters*, 465 S.W.3d 30 (Ky. 2015).[7]

In our 2015 opinion, we noted Deters' "various violations stemming from his aggressive litigation strategy[,]" and stated "[w]e would be remiss if we did not mention Deters's lengthy disciplinary history—the vast majority of which is a direct result of his aggressive litigation strategy or conduct similar to the conduct at issue here." 465 S.W.3d at 35.

On May 25, 2016, Deters filed his current application for reinstatement. By his computation, his most recent suspension terminated on May 17, 2016. Deters had filed a reinstatement application in 2013, as to which the Office of Bar Counsel had filed an objection to automatic reinstatement based on pending disciplinary cases. The record discloses interviews with federal and state judges in Northern Kentucky and lawyers in that area who held an overwhelmingly negative opinion of Deters and the manner in which he practiced law. When those interviews were disclosed to Deters, he withdrew

---

[6] Discipline was imposed for two separate cases in which Deters was sanctioned for (a) threatening disclosure of confidential client information; (b) unauthorized practice of law (in another jurisdiction (Indiana)); (c) failing to maintain advance fee in a proper escrow account; and (d) acknowledging probable cause of violation of rules regarding diligence, communication and declining or terminating representation. 484 S.W.3d at 300-01.

[7] Discipline was imposed for two separate cases in which Deters was sanctioned for (a) filing pleadings "not well grounded in fact nor . . . warranted by existing law" in violation of CR 11 and constituting conduct against frivolous or unsubstantiated filings; and (b) similar actions which had been sanctioned in federal court.

his application in 2014. Bar Counsel reaffirmed its objection to Deters'

automatic reinstatement in May 2016. The Committee conducted an

investigation and held a formal hearing in November 2018.[8] The Committee

then issued on February 22, 2019, a 65-page Findings of Fact, Conclusions of

Law and Recommendation to deny Deters' application. The Board, under SCR[9]

3.510(3), reviewed the record and, in June 2019, similarly recommended

denying the application. Thereafter, we reviewed the application and record.

Rather than approving or disapproving the Board's recommendation, by Order

entered December 19, 2019, we directed Deters to undergo a full psychological

examination by one of three predetermined licensed psychologists, and further

set forth time parameters for additional hearings. Importantly, we stated:

> 2. Within sixty (60) days of the evaluation, Deters shall obtain from the chosen provider a report of the provider's opinions and shall provide a copy of said report to his counsel and counsel for the Committee. Said report shall include but shall not be limited to an opinion on whether Deters possesses the ability to comply with our ethical rules.

---

[8] Deters complains about the length of time between his filing his application for reinstatement and the Committee's hearing, a period of 2½ years. Deters perhaps would have a valid point, IF he had completely disengaged from legal matters. The record, however, discloses that he did not. He continued to act in almost every regard as a practicing attorney in Northern Kentucky and Ohio with the exception of not standing in front of a judge or jury. The Committee was well within its duties to fully investigate Deters' activities. Even were we to acknowledge the Committee's investigatory period appears longer than reasonably necessary, Deters has not been the only applicant to endure such a delay. *See Lococo v. Ky. Bar Ass'n*, 2020-SC-0543-KB, 2021 WL 1685691 at *1 (Ky. Apr. 29, 2021) (delay of two years, one month between filing and formal hearing). No rule, however, permits reinstatement due to an inordinate delay in the Committee's hearing schedule.

[9] Kentucky Rules of Supreme Court.

3.      Within ninety (90) days of the receipt of the report, the Committee shall conduct a new hearing on all issues relevant to Deters' application for reinstatement.

Deters chose Dr. Paul Anthony Ebben as his provider. Dr. Ebben's report is in the record, and in his Forensic Opinion, Dr. Ebben stated the following:

Mr. Deters and the undersigned had a fairly thorough discussion with regard to the difference between a person's "capacity" to follow rules and a person's "willingness" to follow rules, as there does not appear to be any limitation in his "capacity" to follow roles as he is an intelligent man who does not have a clear diagnosable mental health condition, who does not abuse substances, and who does not have neurocognitive issues that would impair functioning, so the real issue is whether he is "willing" to follow rules, which is entirely up to him and fully under his control. Mr. Deters expressed an understanding of the difference between "capacity" and "willingness," and should he be allowed the opportunity to practice law again, he is confident he will be able to control his passion and zealous propensities and follow all ethical guidelines because he does not want to go through this kind of ordeal again.

So to address the Supreme Court's question, it is the undersigned's opinion and conclusion, within reasonable psychological certainty, based on the information provided, that Mr. Deters does, in fact, possess the "capacity" to follow all legal and ethical guidelines relevant and pertinent to the practice of law in the state of Kentucky, but as far as his willingness to do so, that remains to be seen, as he has not practiced law in quite some time. To his credit, Mr. Deters did acknowledge some wrongdoing, he engaged in unprofessional conduct, a violation of ethical rules, and he knows he has to modulate his behavior, and he is willing to do so. On the other hand, Mr. Deters also continues with a defensive stance, he believes he has done nothing truly wrong, so that leads the undersigned to believe that there will be times when his perception of an issue is different from others (even the masses), so future behavior is best understood and predicted in terms of one's past behavior (most importantly, recent past behavior). Not unlike predicting weather, it is much more accurate to appreciate what the weather is going to be like an hour into the future based on current conditions versus conditions two or three days ago. Recent past behavior is the best predictor of future behavior, while it is still true that all past behavior is relevant. Mr. Deters described a situation

5

where he has tried, most recently, to "dot all i's and cross all t's" in order to be reinstated as a practicing lawyer, notwithstanding the fact that his reinstatement has been rejected. His personality style (which admittedly involves some degree of attention and approval seeking)[10] and his "bulldog" reputation will continue to be a challenge to control, but I don't see an acute, treatable mental health condition as an obstacle. His personality disorder features will be obstacles but they are controllable. The bottom line is, he is capable of ethical conduct if he chooses that path.

The Committee's supplemental hearing was delayed by the onset of the COVID pandemic and this Court's orders delaying proceedings. Preliminary to the supplemental hearing, the Committee issued an Order directing Deters to supplement and update certain materials, specifically, update his application for reinstatement by providing current answers, copies of his 2018 and 2019 federal tax returns, the Deters Firm 2018 and 2019 tax returns, an updated credit report, and updated reports as to how much the Deters Firm has paid him in 2019 and to-date in 2020. The Committee directed that Bar Counsel was to receive the documents by April 30, 2020.

In September 2020, the Committee held the supplemental hearing. The only witnesses to testify were Dr. Ebben and Deters. Dr. Ebben's report and opinion were introduced. Significantly, Dr. Ebben testified, consistent with his report, that Deters has no underlying mental or cognitive condition that prevents Deters from making better decisions, but that he has to choose to do so. Dr. Ebben's opinion was that past behavior, especially recent past behavior, is indicative of future behavior.

---

[10] Dr. Ebben's testing found Deters' personality to demonstrate histrionic traits; and Deters' medical records noted symptoms of narcissism.

Deters argued that the only relevant issue for the Committee was Dr. Ebben's report and, in Deters view, its confirmation that he had no underlying psychological problems that prevented him from following the rules. Deters therefore refused to present any of the updates ordered by the Committee.

The Committee issued its Findings, Conclusions and Recommendations in December 2020, incorporating its Findings and Conclusions from February 2019. It unanimously recommended Deters not be reinstated. The Board then undertook review of the record. Following a hearing, it too unanimously recommended against reinstatement. This matter now returns to us for our review.

## II.    Standard of Review

In *Doan v. Ky. Bar Ass'n*, 423 S.W.3d 191, 195 (Ky. 2014), we stated that "[t]he substantive question before this Court . . . is . . . whether [the] application for reinstatement should be approved." In answering "this question, the Court looks at the record developed below and the recommendations of the Committee and the Board." *Id.*

## III.    Analysis

SCR 2.300 governs the reinstatement of persons to practice law, setting forth the scope and purpose of reinstatement guidelines. SCR 2.300(6) acknowledges that while normally the KBA bears the burden of proof in disciplinary cases, in reinstatement cases, that burden is reversed and imposed on the applicant. Specifically, "the applicant has the burden of proving by clear and convincing evidence that he/she possesses the requisite

7

character, fitness and moral qualification for re-admission to the practice of law[.]" *Id.*; *White v. Ky. Bar Ass'n,* 989 S.W.2d 573, 576 (Ky. 1999); *In re Stump,* 272 Ky. 593, 598-99, 114 S.W.2d 1094, 1097 (1938). The rule reiterates this burden of proof by including it with respect to each of the following nonexclusive criteria that the Committee is to consider:

> (a)     Whether the applicant has presented clear and convincing evidence that he/she has complied with every term of the order of suspension or disbarment.
>
> (b)     Whether the applicant has presented clear and convincing evidence that his/her conduct while under suspension shows that he/she is worthy of the trust and confidence of the public.
>
> (c)     Whether the applicant has presented clear and convincing evidence that he/she possesses sufficient professional capabilities to serve the public as a lawyer.
>
> (d)     Whether the applicant has presented clear and convincing evidence that he/she presently exhibits good moral character.
>
> (e)     Whether the applicant has presented clear and convincing evidence that he/she appreciates the wrongfulness of his/her prior misconduct, that he/she has manifest contrition for his/her prior professional misconduct, and has rehabilitated himself/herself from past derelictions.
>
> Failure to meet any of these criteria may constitute a sufficient basis for denial of a petitioner's application.

*Id.* SCR 2.300(7), entitled "Presumptions and Weight of Evidence," sets out additional considerations for the Committee:

> A petitioner for reinstatement will be held to a substantially more rigorous standard than a first-time applicant for an initial admission to the Bar. The prior determination that he/she engaged in professional misconduct continues to be evidence against him or her and the proof presented must be sufficient to overcome that prior adverse judgment.
>
> Among the considerations to be weighed are:

8

The nature of the misconduct for which the applicant was suspended or disbarred.

The applicant's conception of the serious nature of his or her act. The applicant's sense of wrongdoing.

The applicant's previous and subsequent conduct and attitude toward the courts and the practice, including the element of time elapsed since disbarment.

The applicant's candor in dealing with the Character and Fitness Committee.

The relevant knowledge of witnesses called by the applicant.

*Id.*

### A. *Compliance with the Order of Suspension*

The Committee found repeated instances of Deters acting in a fashion beyond what it believed permissible for a suspended lawyer. We agree with this finding.

Under SCR 3.130(5.7)(b), Deters is prohibited from working at Deters Law as it is a violation for the firm to employ someone associated with the law firm at the "time of such member's suspension." Deters testified that the law firm was the same firm following his suspension; he "transferred the firm to his father, Charles Deters, as "cover." A non-lawyer office manager/spokesperson/ paralegal/law clerk does not appropriately provide direct oversight of associate attorneys, negotiate the hiring and firing of attorneys, make compensation decisions of attorney contract employees, all of which Deters did. Likewise, conducting monthly meetings with all the plaintiffs in what was referred to as

the Durrani litigation,[11] wherein Deters presided and presented the information on the case is prohibited.  *See* SCR 3.130(5.7)(a)(1) (prohibiting "render[ing] legal consultation or legal advice to any person[]").  The Commentary to this Rule clearly provides that the suspended lawyer is not to have "communication with any clients of the employing attorney" or "communications with any attorneys other than the employing attorney."  *Id.*, cmt. 2.

Associates presented to courts business cards which indicated they were employed by "Eric C. Deters and Partners, PSC" during a period of suspension. This is similarly inappropriate.  *See* SCR 3.130(7.50)(5) (providing "[t]he name of a lawyer who is suspended by the Supreme Court from the practice of law may not be used by the law firm in any manner until the lawyer is reinstated[]").  Deters contacted and met with attorney Eric Kennedy to discuss serving as co-counsel with the Deters firm in litigation, which is also clearly beyond the bounds of behavior permitted by SCR 3.130(5.7).

The Committee expressed concern about the commercials that continued running on the firm website even after Deters was privately admonished for a false and misleading advertisement during the pendency of his suspension. These commercials began in the Fall 2017, while Deters was suspended.  Those commercials, and indeed the website, were not taken down until the first day of the hearing when Bar Counsel found that a commercial was still on the website.  Numerous postings on Facebook clearly indicated that Deters is

---

[11] The Durrani litigation were numerous cases the Deters Law Firm had filed against Abubakar Atiq Durrani, M.D., in Hamilton County, Ohio.

10

licensed, containing no disclaimer that he is not. The postings direct prospective clients to call Deters 24/7 and he will be sure the caller is taken care of. These postings give the clear appearance that Deters is a licensed attorney. *See* SCR 3.130(7.10) (stating "[a] lawyer shall not make a false, deceptive or misleading communication about the lawyer or the lawyer's service. A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading[]").

SCR 3.130(5.7)(a)(4) expressly prohibits a suspended lawyer from "knowingly appear[ing] as a representative, spokesperson, or salesperson-in any visual, audible, print, or electronic media of any kind for any law firm or legal-related entity providing or proposing to provide legal service to the public or a specific subset of the public at large." The commentary to the rule states a suspended lawyer is not to have "any interaction with the public from which it might reasonably appear that the suspended lawyer is a lawyer in good standing." *Id.*, Cmt. 2.

The record also reveals Deters received inappropriate compensation. An email from Gary Collier, Deters' accountant, disclosed the following amounts paid:

|      |              |
|------|--------------|
| 2013 | $322,928.42  |
| 2014 | $233,622.78  |
| 2015 | $233,580.05  |
| 2016 | $266,190.33  |
| 2017 | $212,771.76  |

11

Deters and his father, Charles Deters, attempted to justify these payments. Mr. Deters, in an affidavit, averred: "I pay his bills as his salary at the firm." Deters testified that he was paid by interest-free loans from the law firm that were considered accounts receivable. Deters' personal tax returns for 2017 show no earned income other than limited rental income.[12] The firm's corporate tax return did not appear to identify any accounts receivable to Deters.

Deters' explanation is unpersuasive. Our predecessor court noted what it described as a disbarred lawyer's receipt of "substantial sums as compensation for his services on several occasions during the period of his disbarment." *Lester v. Ky. Bar Ass'n*, 532 S.W.2d 435, 436 (Ky. 1975). The court stated "[t]he payments are more nearly commensurate with those received for legal services than with the token sums generally earned by law clerks." *Id.* We agree with the Committee that this payment arrangement violated the spirit if not the letter of the Orders of Suspension.

At the 2020 supplemental hearing, Deters testified, "I'm filthy rich now, but I went through seven years of betting everything I had." He bragged of obtaining $94 million in judgments in the Durrani litigation. As rhetorically posed by the Committee, "How did this happen? What part of the $94 million verdicts was distributed, if any, to Deters?" This testimony was in contrast to his testimony at the earlier hearing that he was broke. As noted by the Committee, Deters refused to cooperate and provide documentation. We will

_____

[12] The tax return indicated Deters' occupation as "attorney."

take Deters at his word and note his legal compensation at the level of a high-end personal injury attorney, and not that of a paralegal or law clerk.

As with each factor under consideration, Deters bears the burden to prove by clear and convincing evidence that he has complied with all provisions of the Order of Suspension. *See Wade v. Ky. Bar Ass'n*, 605 S.W.3d 329, 331-32 (Ky. 2020) (reinstatement denied due to failure to comply with terms of suspension). As to this factor, Deters fails to prove compliance in any respect.

### B. *Trust and Confidence of the Public*

The second factor set out in SCR 2.300(6) concerns whether Deters' conduct while under suspension shows that he is worthy of the trust and confidence of the public. Our case law, in part, considers the applicant's candor towards the Committee in evaluating his truthfulness. *Burns v. Ky. Bar Ass'n*, 318 S.W.3d 591, 595 (Ky. 2010); *see In re Cohen*, 706 S.W.2d 832, 834–35 (Ky. 1986) (stating "[i]n a reinstatement proceeding it is important that the applicant be completely candid with the reviewing authorities at all times[]"). We also consider the nature of Deters' prior violations.

Deters did not fully disclose several items requested in the Application for Reinstatement. His credit report disclosed a federal lien for unpaid income taxes in excess of $118,000. While he answered "yes" to whether he had any outstanding liens, he left blank the space in which to fully explain his yes answer. To a subsequent question as to whether he had failed to pay any federal or state personal or business taxes, he answered "no."

13

To the question, "Have you ever been charged with fraud, deceit, misrepresentation, forgery, or other acts of dishonesty in any civil, criminal, administrative or other proceeding?", Deters answered "no." This answer was obviously untruthful in that at least two of Deters' prior suspensions had resulted from multiple misrepresentations. *Deters*, 406 S.W.3d at 820-21; *Deters*, 360 S.W.3d at 230-32. In addition, Deters was sued by his professional liability insurance carrier for cancelation of its policy due to his misrepresenting on its application that he had never been subjected to disciplinary actions. *See Evanston Ins. Co. v. Eric C. Deters & Partners, P.S.C.*, 2:14-CV-00093 (E.D. Ky. Jan. 28, 2015) (policy declared void *ab initio*).

The Application requested Deters disclose all litigation in which he had been involved. In addition to the failure to disclose the insurance matter, Deters failed to disclose a number of other matters as pointed out by Bar Counsel and adopted by the Committee in its initial Findings: *Acton v. Deters*, 1:2013-CV-00253 (S.D. Ohio) (an action claiming legal malpractice); *N. Ky. Props. v. Deters Law Firm*, Docket No. 15-CI-18 (Kenton Circ. Ct. 2015) (pending as of Jan. 19, 2019); and multiple cases of litigation against the Kentucky Bar Association other than in disciplinary cases. Among these cases is *Deters v. Ky. Bar Ass'n*, 130 F. Supp. 3d 1038 (E.D. Ky. 2015), *aff'd* 646 Fed. App'x 468 (6th Cir. 2016) (both the district court and the circuit court opinions cite many of Deters' lawsuits against the KBA).

After remand from this Court in 2020, the Committee, in preparation with our mandate that it "conduct a new hearing on all issues relevant to

14

Deters' application for reinstatement," issued an Order that Deters update his application for reinstatement by providing current answers, copies of his 2018 and 2019 federal tax returns, the Deters Firm's 2018 and 2019 tax returns, an updated credit report, and updated reports as to how much the Deters Firm has paid him in 2019 and to-date in 2020. As previously noted, Deters failed to comply. He said counsel had not given the Order to him, but he also testified that he would produce nothing further, based on his belief that the only issue was Dr. Ebben's report.

Deters' view is erroneous. Had we intended that the only issue at this new hearing was Deters' mental ability to follow the rules, we would have so stated. We did not. Our Order clearly and unambiguously provides that the Committee is to conduct a new hearing on **all issues** relevant to Deters' application." (Emphasis added.) Deters failure to comply with the Committee's simple Order reflects poorly on his ability to be candid with the Committee.

We also note that Deters' misleading commercials and social media posts which can only be considered as representing that he is licensed to practice law and in good standing are strikes against his reinstatement.

Deters bears the burden to prove by clear and convincing evidence that his conduct while under suspension shows that he is worthy of the trust and confidence of the public. He has failed to meet his burden on this factor. *See Hubbard v. Ky. Bar Ass'n,* 66 S.W.3d 684, 692 (Ky. 2001) (citing *Cohen,* 706 S.W.2d at 834) (stating "reinstatement is not warranted where an applicant has not been completely candid with the reviewing authority at all times[]"). While

15

our conclusion as to Deters' failure to be candid with the Committee dictates that his application must be denied, we will discuss two additional factors: professional capabilities and appreciation of wrongness of past conduct.

### C. *Possessing Sufficient Professional Capabilities*

The third factor to be considered in whether to grant reinstatement is whether Deters possesses sufficient professional capabilities to serve the public as a lawyer. The Committee noted that Deters had satisfied his CLE[13] requirements at the time of reapplication; it, however, noted that possession of sufficient capabilities to serve the public as a lawyer encompasses more than minimum CLE compliance. We agree with the Committee that professional capabilities involve honesty, truthfulness, candor to courts and administrative bodies, honor, professionalism, and integrity.[14] In fewer words, the ability and willingness to comply with our rules of practice and our ethical rules.

The record, and as found by the Committee, discloses that Deters was less than fully candid with the Committee in his disclosures and at times inconsistent. The Committee expressed lack of confidence that, if reinstated, Deters would be candid with the courts. Multiple witnesses stated Deters cannot comply with rules and does not believe that rules are meant to apply to

---

[13] Continuing Legal Education.

[14] While these characteristics also are pertinent as to whether an applicant possesses good moral character, we choose to discuss them in the context of professional capabilities. Deters' Brief to this court emphasizes his lack of criminal record, embezzlement, or addictive behaviors. Those factors are certainly part of good moral character, but in the context of an attorney's reinstatement, honesty, truthfulness, candor, honor, professionalism and integrity are also important.

16

him.  His conduct and attitude in correspondence with attorneys and judges, in Facebook videos, in pleadings and in press conferences do not evidence professionalism, respect for the law, the bar or for the courts in any manner.

The psychological evaluation by Dr. Ebben is pertinent here.  Our remit was for an evaluation as to whether "Deters possesses the ability to comply with our ethical rules."  On this issue, Dr. Ebben was clear.  Deters possess the capacity to follow the rules, but then stated that the issue is his willingness, and in that regard past behavior, and more pertinently recent past behavior is most indicative.

While Deters claims that he will "be a Boy Scout" if he is reinstated, we are unable to ignore Deters recent behavior.  In two separate federal lawsuits, he sued a Hamilton County, Ohio, circuit judge, *Deters v. Schweikert*, No. 1:19-cv-0024, 2019 WL 2290650 (S.D. Ohio May 6, 2019), as well as one of the witnesses against him in this proceeding, Mark Hammer.  *Deters v. Hammer*, No. 1:20-CV-00362, 2021 WL 664011 (S.D. Ohio Feb. 19, 2021).  Deters filed these actions even though both defendants have absolute immunity. *Schweikert*, 2019 WL 2290650, at *3-*7;  *Hammer*, 2021 WL 664011, at *4-*6. The suit against Judge Schweikert was dismissed on a motion for judgment on the pleadings, and the court issued a show cause order directing Deters to show why a monetary sanction should not issue due to "inclusion of patently frivolous claims and arguments in clear violation of [Fed. R. Civ. P.] 11[.]" *Schweikert*, 2019 WL 2289150, at *8.

17

Deters' run-in with Judge Schweikert arose from the Durrani litigation in Hamilton County, Ohio. In an effort to obtain jury pools untainted by pre-trial publicity, Judge Schweikert imposed a "gag order" on the parties and counsel. *In re Deters*, No. C-1905516, 2020 WL 3526768 ¶ 3 (Ohio Ct. App. June 30, 2020), *appeal not allowed*, 160 Ohio St. 3d 1496, 159 N.E.3d 281 (Ohio Dec. 20, 2020). In defiance of that order, Deters called for a press conference on the Hamilton County Courthouse steps. *Id.* at ¶ 5. As a result, he was jailed for contempt. *Id.* ¶ 6. He was released from jail after serving seven of fifteen days, but the Ohio Court of Appeals upheld the contempt judgment and the Ohio Supreme Court let that decision stand by declining jurisdiction. 160 Ohio St. 3d 1496, 159 N.E.3d 281.

These recent actions demonstrate a complete lack of professional capability, as do his emails to Elizabeth Feamster, former Executive Director of the Kentucky Office of Bar Admissions. When Ms. Feamster was attempting to schedule hearings in this matter, Deters accused her of being a "liar" and then demanded his reinstatement. This, even though under the structure of the reinstatement rule, Ms. Feamster did not have the ability to grant Deters' demand.

Pertinently, in his Exceptions to the Committee's Recommendation filed December 10, 2020, Deters resumed his attack on the KBA, the Committee and Bar Counsel, and claimed he had offered "overwhelming proof in the record for [his] reinstatement." He concluded, with the following:

18

**CONCLUSION**

> Susan Lawson and the rest of the Committee, Ms. Browne and Ms. Herrick are jokes of human excrement who [sic] I refuse to allow to sit in judgment of me. They can all go straight to hell. They couldn't do what I do for a day. Yet, they judge me? They may judge me because of their positions, but they can't stop me from what I do, will continue to do and what I say publicly about them. I have EVERY right to be pissed off and EVERY right to speak out.

This filing speaks volumes of Deters' inappropriate "no holds barred approach" to law practice.

Deters' actions indicate a lack of respect for the profession, the courts, lawyers, and other participants. The record discloses a notorious propensity to file malicious or frivolous lawsuits. In fact, Federal Magistrate Judge Bowman, of the Southern District of Ohio, in her recommendation for dismissing Deters' defamation complaint against Hammer, noted as much in a recent opinion discussing Deters' filing of malicious or frivolous litigation. *Hammer,* 1:20-cv-00362-DRC-SKB, 2021 WL 664011, slip op. at 12-15. Magistrate Judge Bowman wrote that Deters "is skating on thin ice. [Deters] has filed suit against defendants who enjoy absolute immunity on multiple occasions, including this case, and **either fails to understand or willingly disregards that clear legal doctrine.**" *Id.* at 15 (emphasis added).

In this instance, we agree with Deters' argument that we should adhere to Dr. Ebben's opinion. We do. Deters possesses the ability to follow the rules, he simply chooses not to. His activities while licensed demonstrate that, as do his more recent activities during his period of suspension and in the last two years. *See Futrell v. Ky. Bar Ass'n,* 189 S.W.3d 541, 549 (Ky. 2006) (stating

19

"the reinstatement inquiry involves looking into an applicant's 'conception of the serious nature of his act and his previous and, what is of more importance, his subsequent conduct and attitude toward the courts and the practice[]'").

### D. Appreciation of Wrongfulness of Prior Misconduct, Manifest Contrition for Prior Professional Misconduct, and Rehabilitation from Past Derelictions

The previous sections of this Opinion clearly set forth that Deters has NO appreciation of the wrongfulness of his prior misconduct, possesses NO contrition for that misconduct, and has NOT rehabilitated himself from past derelictions. *See Futrell*, 189 S.W.3d at 549 (noting applicant did not admit serious nature of unethical conduct, minimized its nature, and blamed other person and entities for his behavior); *Skaggs v. Ky. Bar Ass'n*, 954 S.W.2d 311, 314 (Ky. 1997) (noting applicant had little regret for conduct leading to suspension and failed to realize his problems are the logical consequence of his actions). Like Futrell and Skaggs, Deters fails to accept the fact of his wrongdoing or to manifest a sense of wrongdoing.

### IV.    Conclusion

Deters' lack of self-awareness is utterly amazing. Deters fails completely to make any attempt to fit his application for reinstatement within the framework required by SCR 2.300(6). Throughout the record, Deters alleges the KBA, and perhaps we, have different rules for him, or that we want all attorneys to be passively the same. We reject any such claim or insinuation. Everyone knows aggressive lawyers who zealously advocate for their clients. Not only is this permitted, but as stated in the Preamble to our Rules of

Professional Conduct, we expect a lawyer as advocate to "zealously assert the client's position **under the rules** of the adversary system." SCR 3.130 pmbl. III (emphasis added). What Deters fails to understand is that the adversary system, and our profession, is governed by rules. As we understand Deters' concept of the practice of law, no Rules of Professional Responsibility, no statute, no case law bind him. Deters' practice of law is not governed by constitution, rule of law or procedure. It is anarchy. To paraphrase from an earlier opinion, "[Deters] seems as indifferent to his duties and responsibilities in his own case as he was in that of his client. Citizens and, in particular, attorneys are not permitted to pick and choose which laws they wish to obey." *Skaggs*, 954 S.W.2d at 314.

## ORDER

Based on the foregoing, we enter the following Order:

1. The Application of Eric Charles Deters, KBA Member No. 81812, for Reinstatement is DENIED.

2. Deters shall cease any and all activities relating to the practice of law, howsoever designated, including, but not limited to paralegal, consultant or spokesperson for the Deters Law Firm or any other entity.

3. Deters shall cease any and all advertising relating to the practice of law in any media whatsoever, including, but not limited to television, radio, print, direct mail, internet or social media.

21

4. The cost of this proceeding as certified by the Kentucky Bar Association, $6,631.76, shall be paid by Deters to the Kentucky Bar Association within thirty (30) days of the entry of this Order.

All sitting. Minton, C.J.; Conley, Hughes, Lambert, Nickell and VanMeter, JJ., concur. Keller, J., concurs in result only without separate opinion.

ENTERED DATE: June 17, 2021.

_____
CHIEF JUSTICE